# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 20-1998V

|  |  |
|---|---|
| KATHY TERRY,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: January 2, 2024 |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Bridget Corridon*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On December 28, 2020, Kathy Terry filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine she received on October 12, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of her alleged vaccine-related injury for more than six months, and

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

that she has satisfied all of the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.   Relevant Procedural History

On December 1, 2022, about 23 months after the case was initiated, Respondent filed his Rule 4(c) Report and a Motion to Dismiss. *See* ECF No. 26-27. Respondent argues that Petitioner has failed to establish entitlement to compensation because she had failed to show a Table SIRVA injury, and otherwise could not satisfy the statutory severity requirement. Rule 4(c) Report at 4-6. Petitioner filed additional medical records on January 13, 2023 and February 6, 2023 (ECF No. 28-30) and a Response to Respondent's Motion to Dismiss ("Resp.") on February 13, 2023. ECF No. 31. Respondent filed a reply on March 6, 2023 ("Repl."). ECF No. 32.

The matter is now ripe for adjudication.

## II.   Factual History

Petitioner received the flu vaccine on October 12, 2020. Ex. 3 at 23. Although the vaccination record states that it was administered into her right arm, Petitioner alleges that the vaccine was administered into her left arm. *Id*.; Ex. 9 at ¶2. Petitioner specifically recalled that she was sitting during the vaccination, with the nurse standing on her left side. *Id*. She recalled that "it hurt right away" and worsened over the following week. *Id*. at 2, 4.

On November 9, 2020 (28 days after her vaccination), Petitioner saw her primary care provider ("PCP") with complaints of left shoulder pain. Ex. 3 at 17. Petitioner reported that her shoulder "was sore after the injection, but . . . that it gradually worsened to the point where she needs her husband's help to change shirts." *Id*. The record also notes that "approx. 1 week after flu vaccine pt noticed she was having pain with ROM of left shoulder" and that the symptoms "started 1 month ago." *Id*. The doctor assessed Petitioner's pain as "likely [due to] bursitis as a result of having an injection in the deltoid muscle" and prescribed a Medrol Dosepak. *Id*. at 18.

Petitioner returned to her PCP on November 23, 2020 with continued left shoulder pain. Ex. 3 at 10. She reported continuing left shoulder pain and tingling sensations in her left hand during the night. *Id*. She was prescribed another Medrol Dosepak, as well as Tramadol for foot pain. *Id*. at 11.

On January 19, 2021, Petitioner saw orthopedist Dr. Timothy Shannon. Ex. 4 at 7. She reported left shoulder pain since October 12, 2020 ("she got the flu shot and it has been hurting ever since."). *Id*. On exam, Petitioner's range of motion was "decreased slightly" in all planes and impingement testing was positive. *Id*. at 9. An x-ray was normal.

2

*Id*. Petitioner was prescribed meloxicam and gabapentin and referred to physical therapy. *Id*. Petitioner returned to Dr. Shannon on February 9, 2021 for a follow-up evaluation of her left shoulder and for treatment on her right knee. Ex. 8 at 5. The record notes Petitioner's diagnosis of subacromial impingement in her left shoulder, but no examination or treatment notes were recorded. *Id*.

After one year, Petitioner saw a second orthopedist, Dr. Matthew Link, on February 2, 2022, for her left shoulder pain. Ex. 12 at 92. Petitioner reported left shoulder pain "for over a year since obtaining a left shoulder flu vaccine." *Id*. Dr. Link assessed a possible rotator cuff tear with possibly resolving adhesive capsulitis. *Id*. at 94. He ordered x-rays and an MRI. *Id.* Petitioner returned to see Dr. Link on February 16, 2022 after an MRI. *Id*. at 85. The MRI showed mild tendinopathy, but no tear. *Id*. at 87. Dr. Link diagnosed "shoulder related vaccine pain [sic]," and mild subacromial bursitis and administered a cortisone injection. *Id*.

Petitioner began physical therapy on May 4, 2022. Ex. 11 at 45. At the initial evaluation, Petitioner reported left shoulder pain since October 2020, which she attributed to "receiving a flu shot in that shoulder at that time." *Id*. She reported that the cortisone injection provided "little improvement in symptoms." *Id*. On exam, her range of motion was "grossly limited" and her impingement testing was positive. *Id*. at 46. She had a total of twelve physical therapy treatments through July 8, 2022. *Id*. at 51. At her final visit, Petitioner reported "minimal" shoulder pain. *Id*.

Petitioner returned to Dr. Link on July 20, 2022 reporting increased range of motion, but continuing pain, after physical therapy. Ex. 12 at 70. He assessed a left shoulder SLAP tear and scheduled arthroscopic surgery. *Id*. at 71. Petitioner underwent arthroscopic surgery on August 29, 2022, which included limited debridement and open subpectoralis biceps tenodesis, as well as excision of a lipoma from her left shoulder and an injection to Petitioner's right elbow. *Id.* at 22-23. She continued thereafter to receive post-surgical care from her orthopedist, and had additional physical therapy treatment as well. *See* Ex. 10, 12.

### III.     Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged

injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL

408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Findings of Fact

### A. *Site of Vaccination*

The entirety of the record preponderantly supports the conclusion that Petitioner more likely than not received the October 12, 2020 vaccination in her left arm.

The degree to which Petitioner was consistent in reporting her shoulder pain as related to her flu vaccine when seeking treatment is especially convincing evidence supporting her situs argument. On November 9, 2020, at her first visit with her PCP about the problem (and not all that long after vaccination), Petitioner specifically attributed her pain to her vaccination, stating that "it was sore after the injection, but … that it gradually worsened." Ex. 3 at 17. Petitioner thereafter continued to complain of left shoulder pain at each subsequent doctor encounter and never complained of right shoulder pain. *See e.g.*, Ex. 3 at 10, Ex. 4 at 7, Ex. 8 at 5, Ex. 12 at 95.

Petitioner's vaccine administration record, by contrast, is problematic, as it indicates that she received the vaccine in her right deltoid. Ex. 6 at 7. Petitioner's supplemental affidavit, however, provides some additional details about the circumstances of administration that call the record into doubt. *See* Ex. 9. Petitioner stated that because she is right-handed (a fact corroborated by her medical records), she chooses to get vaccinations in her left arm. Ex. 9 at 1. She specifically recalled sitting for her vaccination, with the administering nurse "standing on her left side." *Id*. at ¶2. She recalled pain "right away . . ., which made the circumstances of the vaccination memorable." *Id*. Petitioner states that she did not know "why the record indicates the right arm," and alleges that "it had to be an error on the part of the person completing the form." *Id*. at ¶3. In addition, there is no evidence *other* than the administration record that the vaccination was administered in Petitioner's right arm.

The totality of Petitioner's medical records also clearly indicate that she suffered from left shoulder pain after vaccination, and she attributed it to a flu shot administered into her left shoulder. She received treatment only to her left shoulder, including physical examinations, xrays, an MRI, a cortisone injection, physical therapy, and surgery. There is no indication in the record of any other possible cause of Petitioner's left shoulder pain.

Overall, Petitioner's assertions are sufficiently corroborated by the medical records to accept her contention of vaccine situs. At worst, the conflicting records make this a "close-call," but in such cases Program case law counsels deciding the matter in a petitioner's favor. *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Aug. 29, 2013). Accordingly, I find it more likely than not that the vaccine alleged as causal in this case was administered to Petitioner in the left shoulder/arm on October 12, 2020.

### B. *Onset*

Respondent maintains that Petitioner has not established Table onset because the record of her first visit to her PCP for her left shoulder pain states that Petitioner "noticed pain 'approximately one week after her flu vaccine.'" Rule 4(c) Report at 6. However, Respondent mischaracterizes the record as a whole. First, Petitioner reported soreness "after the injection," which "gradually worsened to the point that she needs her husbands help to change shirts." Ex. 3 at 17. Petitioner also reported that "approx. 1 week after flu vaccine [patient] noticed she was having pain with ROM of left shoulder." *Id.* Petitioner explained her in supplemental affidavit that she "felt pain right away" at the time of vaccination, which progressively worsened to impact her range of motion. Ex. 9 at ¶4. Petitioner's testimony is consistent with the record of the November 9, 2020 visit – that her pain began immediately upon vaccination, and worsened over time leading to ROM limitations. The Federal Circuit has held that it is appropriate to credit the lay testimony of a petitioner when said testimony does not conflict with the medical records. *Kirby*, 997 F.3d at 1384. Petitioner's affidavit testimony provides consistent detail to the more general statements noted in the medical records.

Other medical records also corroborate an immediate onset of Petitioner's pain. On January 19, 2021, at her first visit with an orthopedist, Petitioner reported that "she got the flu shot [on 10-12-2020] and it has been hurting ever since." Ex. 4 at 7. Further, when Petitioner started physical therapy on May 4, 2022, Petitioner reported that the start of her symptoms occurred when she received a flu vaccination in her left shoulder in October 2020. Ex. 11 at 45. Again, Petitioner's affidavit testimony is not inconsistent with these records, but provides additional detail sufficient to place onset within 48 hours of vaccination.

Although Respondent argues that Petitioner had a pattern of seeking care "for acute pain within a comparatively shorter amount of time," her 28-day delay does not preclude a Table onset finding. Rule 4(c) Report at 6. Such a treatment delay is not substantial when compared to other SIRVA petitioners. *See e.g. Winkle v. Sec'y of Health & Human Servs.,* No. 20-0485V, 2021 WL 2808993 (Fed. Cl. Spec. Mstr. 2021) (finding onset after a nearly five-month delay); *Welch v. Sec'y of Health & Human Servs.* No. 18-0660V, 2020 WL 7483129 (Fed. Cl. Spec. Mstr. 2020) (finding onset after more than three- and one-half-month delay). Petitioner explained that although her pain began immediately, it worsened over a period of weeks after her vaccination to the point where she required her husband's help with dressing. Ex. 3 at 17. The gradual worsening of pain is a reasonable and credible explanation for Petitioner's brief delay in seeking treatment.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

C. *Severity*

To establish six months of residual effects, Petitioner must demonstrate that her symptoms more likely than not continued until at least April 12, 2021. The record establishes at a minimum that Petitioner had continuous treatment for her injury through her orthopedist appointment on February 9, 2021 – approximately four months after vaccination. Respondent argues that Petitioner has not provided preponderant evidence that her injury lasted at least six months because of a one-year gap in treatment between February 9, 2021 and February 2, 2022. Repl. at 2. Respondent further notes that when Petitioner returned for treatment in 2022, it was more than a year after the Petition was filed, and should therefore be given lesser weight than prior records. *Id*. at 2-3.

Although I agree that the record is very thin on this issue, I find there is bare preponderant support for the finding that Petitioner's symptoms continued for six months from onset. Petitioner was diagnosed with subacromial impingement of her left shoulder on January 19, 2021 (three months post-vaccination), was prescribed medications, and was referred to physical therapy. Ex. 4 at 7-9. The diagnosis continued to be active as of the February 9, 2021 visit, although the record does not reflect additional evaluation or treatment for Petitioner's shoulder that day. Ex. 8 at 5. Thereafter, Petitioner was referred to physical therapy, but no records of therapy during this period were filed. However, there is no evidence *other* than the subsequent treatment gap that Petitioner's symptoms resolved. Thus, the gap itself is not especially robust evidence of cessation of her injury prior to the six-month deadline.

Respondent nevertheless argues that Petitioner was a "new patient" in February 2022 and was not "resuming" treatment for her vaccine injury. Repl. at 2-3. However,

there is sufficient evidence in the records to link Petitioner's symptoms at that time to her flu vaccination in October 2020. First, when she resumed treatment, Petitioner *reported* pain since her flu vaccination in October 2020. Ex. 12 at 94. Second, based on the examination, the doctor specifically linked Petitioner's symptoms to her flu vaccination. *Id*. The orthopedist ordered additional testing specifically to rule out causes other than Petitioner flu shot, such as a rotator cuff tear and cervical radiculopathy, both of which were ruled out. *Id.* at 75, 82, 87. Petitioner continued with significant treatment for her shoulder pain, including surgery and physical therapy. Ex. 10; Ex. 12 at 22-23. Although this is also a "close call," Vaccine Program case law supports deciding the matter in Petitioner's favor under such circumstances. *Roberts,* 2013 WL 5314698, at *10.

Respondent also argues that Petitioner resumed treatment in 2022 only after filing her petition for compensation and for litigation purposes. Repl. at 2-3. In fact, Respondent notes, Petitioner filed her Petition on December 28, 2020, less than three months after her vaccination. Rule 4(c) Report at 6, fn 3. Petitioner's counsel filed a Declaration explaining the early filing, which was required to protect Petitioner's claim because of a "potential Table amendment," which would have eliminated SIRVA from the Vaccine Injury Table. Ex. 2 at ¶1. The proposed Table amendment caused a large number of SIRVA cases to be filed in late 2020, including several cases that would have otherwise been premature. So long as Petitioner has filed sufficient evidence to show that her injury lasted at least six months, her premature filing does not defeat her entitlement to compensation. Further, Petitioner returned to treatment before Respondent made any objection on the basis of severity, which also somewhat undermines Respondent's argument.[3]

Respondent relies on *Delzer v. Sec'y of Health & Human Servs.*, No. 17-0462V, 2019 WL 994582 (Fed. Cl. Spec. Mstr. Jan. 18, 2019) to support his argument regarding Petitioner's gap in treatment and the lack of evidence of continuing symptoms during the intervening year. Repl. at 3. The severity requirement was not met in that case because of strong evidence that the petitioner's symptoms has resolved prior to six months after vaccination, and then subsequent medical records failed to mention shoulder symptoms. *Id.* at *4. In contrast here, there is no evidence that Petitioner's symptoms had resolved before the gap in treatment - and Petitioner's medical records after the gap in treatment not only specifically reflect additional treatment of shoulder symptoms, but also link those symptoms to her vaccination after ruling out alternative causes, such as cervical radiculopathy.

---

[3] Although Respondent's counsel filed an informal assessment of Petitioner's claim on January 7, 2022, he noted that he found no medical records to be missing and he raised no issues requiring further development. ECF No. 20.

Thus, after consideration of the entire record, I find that the evidence just barely preponderates in Petitioner's favor on this issue. Of course, the substantial gap in treatment will likely impact the quantum of damages she may be awarded for her injury.

## V.     Ruling on Entitlement

### A.     *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that her pain began within 48 hours and that her pain and reduced range of motion were limited to the left shoulder, where she received her flu vaccination. 42 C.F.R. § 100.3(c)(10)(ii)-(iii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Accordingly, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### B.     *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccination in her left deltoid on October 12, 2020 at her primary care provider in South Carolina. Ex. 3 at 26; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. *See* Petition at ¶7; Ex. 1; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master